V. G. Nahrgang *v.* United States (No. 5114)*

---

*C.A.D. 840.

United States Court of Customs and Patent Appeals, January 23, 1964

*John C. Ray* for appellant.

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief Customs Section, (*Mollie Strum*, trial attorney, of counsel) for the United States.

*Joseph Schwartz*, as amicus curiae.

[Oral argument November 7, 1963, by Mr. Ray and Miss Strum; Mr. Schwartz as amicus curiae.]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Associate Judges

SMITH, Judge, delivered the opinion of the court:

The issue presented by this appeal is whether imported heat absorbent glass containing a controlled amount of iron oxide is colored glass within the meaning of paragraph 224 of the Tariff Act of 1930.

Entry was made under paragraph 222 of the Tariff Act of 1930, as amended, as plate glass, with duty according to the sizes and values of the respective importation and no protest was made to this classification. In addition, however, the importations were also classified under paragraph 224, as colored plate glass, with assessment of an additional duty of 2½% as therein provided. The assessment of the additional duty under paragraph 224 is the subject matter of

this protest—it being appellant's claim that the involved plate glass is not colored, but is a heat-absorbing glass, designed for automobile windshield use, in which the unsought for tint present in the glass is merely incidental to the inclusion of the iron oxide to impart heat absorbent properties to the glass.

The Customs Court overruled the protest. (48 Cust. Ct. 6, C.D. 2307.) The tint or color of the involved glass was shown to be incidental to the purpose of the inclusion of certain amounts of iron oxide. The inclusion of iron oxide accomplishes two objectives. First, it absorbs energy in the infrared portion of the spectrum and thus reduces heat transmission from the sun's rays; second, it absorbs some of the light in the visible spectrum. Iron oxide is a pigment or coloring agent which in this case is the agent which makes the glass both heat-absorbing and tinted or colored. Two samples of the imported glass were identified by appellant's witness De Gorter as "vert" (greenish) and "bleu" (bluish).

Paragraph 224 (as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, effective June 6, 1951, 86 Treas. Dec. 121, 153, T.D. 52739) reads in pertinent part:

Plate * * * and sheet glass, * * * by whatever process made, when * * * *colored* (except glass not plate glass and not under ¼ inch thick, when obscured by coloring prior to solidification) * * * shall be subject to a duty of_____ 2½ % ad val. in addition to the rates otherwise chargeable thereon. (Emphasis added.)

Fact testimony was taken by appellant and by the Government, from which the Customs Court concluded (48 Cust. Ct. at 13):

The preponderance in weight of the evidence, as hereinabove reviewed, establishes that the polished plate glass in question, at the time of importation, was tinted with either a greenish or bluish hue and that the tint was deliberately acquired by the addition of a specific quantity of iron oxide, a pigment or coloring agent, which, through a controlled manufacturing process, regulates the degree or depth of tint in the imported plate glass in controversy. The presence of the tint or color in this polished plate glass serves two functional purposes. It imparts to the glass heat-absorbing qualities to absorb the radiant transmission of energy from the sun and also controls brightness with consequent alleviation of glare. Both characteristics are equally important for the glass to be acceptable for its commercial practicability.

Appellant's appeal is based, at least in part, on disagreement with the foregoing statement of fact, and we have been urged to reconsider and reweigh the evidence on which the statement was predicated.

In *United States* v. *C. J. Tower & Sons*, 38 CCPA 131, 136, C.A.D. 450, this court said:

* * * The Court of Customs and Patent Appeals has consistently adhered to the long established principle that while it has the power to review findings of the United States Customs Court upon issues of fact, such findings will not be disturbed, especially upon issues which turn upon the intelligence and credibility

of witnesses, unless such findings are without evidence in the record to support them or are clearly contrary to the weight of such evidence.

See also, e.g., *Carey & Skinner, Inc.* v. *United States*, 42 CCPA 86, 90, C.A.D. 576; *United States* v. *F. W. Myers & Co., Inc.*, 45 CCPA 48, 52, C.A.D. 671; and *United States* v. *The Baltimore & Ohio R.R. Co.*, 47 CCPA 1, 6–7, C.A.D. 719.

We have reviewed the record in accordance with the principle announced in the foregoing cases and do not find that the decision of the trial court is contrary to the weight of the evidence. Therefore we shall not disturb the Customs Court's finding of fact.

This leaves for our further consideration the question of the meaning of the term "colored" as used in paragraph 224. The type of glass involved herein, and exemplified by appellant's exhibits 1–A and 1–B, does not appear to have been a commercial item in export trade at the time the Tariff Act of 1930 was enacted. It appears to have been developed during the period of 1935 to 1938 for use by the automotive industry in making windshields. Under these circumstances, an examination of the legislative history of paragraph 224 of the 1930 Act would serve no useful purpose.

Although a tariff act is made for the future in the sense that it embraces later developed or designed articles coming within the definitions provided in the act, the meaning of such definitions is that prevailing when the act was passed. *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669.

The Customs Court held the importation at bar is "colored" plate glass within the common meaning of the term as used in paragraph 224. The imported glass possesses either a green or a blue tint. Dictionary definitions as well as the testimony of witnesses recognize that "tint" is a degree of color, and that the word "colored" implies having color. Therefore, whether one describes the imported glass as tinted glass or colored glass, the fact is that it contains color.

As the Customs Court stated (48 Cust. Ct. at 14) :

The statutory term, or designation, involved herein is colored glass. The record before us does not supply a factual foundation upon which to invoke commercial designation within the requirements enunciated in the cited authorities. The common meanings of words involved in the present controversy are pertinent. Dictionary authorities include the following definitions.

The word, "colored" is defined in Webster's New International Dictionary as follows:

 1. *a* Strictly, having color;—often used in combinations; as, ash-*colored*, warm-*colored*. *b* More commonly in a restricted sense, having chroma. *c* Of a color different from the normal; specif., of foliage, etc., of a color other than (the normal) green.

The same dictionary defines the word, "tint," as follows:

 *1. n.* A slight coloring; a color, esp. a light color; * * *. 2. A tinge; specif., a pale or faint tinge of any hue; as, white without a *tint* of yellow.

Agreement between the quoted definitions and the testimony herein lies in the recognition by both sources that "tint" is a degree of color, and that "colored" implies having color.

■■ The Customs Court also found that the statutory language or designation involved herein is free from ambiguity; hence, its judicial interpretation must come from the act itself (citing *United States* v. *Perry Ryer & Co.*, 41 CCPA 18, C.A.D. 524). Therefore, the court correctly held that since the Summaries of Tariff Information and other extraneous aids are considered only to resolve doubt and not to create it, it was unnecessary to use such extraneous aids in the case at bar.

Appellant has directed our attention to principles enunciated in 2 Sutherland, Statutory Construction 512 (3d ed.), wherein section 5103 states:

Long-continued contemporaneous and practical interpretation of a statute by the executive officers charged with its administration and enforcement, the courts, and the public constitutes an invaluable aid in determining the meaning of a doubtful statute. *This rule of construction is closely related to the doctrine that statutes will be given their common and ordinary meaning, since resort to extrinsic sources is one method of determining the meaning given the language of a statute in actual practice.* In addition, the use of contemporary and practical interpretation makes for certainty in the law and justifies reliance upon the conduct of public officials. (Emphasis added by appellant.)

Appellant also has directed our attention to section 5107, at p. 520 of the same work:

Like all precedents, where contemporaneous and practical interpretation has stood unchallenged for a considerable length of time it will be regarded as of great importance in arriving at the proper construction of a statute. Thus contemporaneous interpretations of five, nine, ten, eighteen, twenty, twenty-five, fifty, fifty-six, sixty, and seventy years have been permitted to govern legislative meaning. One of the soundest reasons sustaining contemporaneous interpretations of long standing is the fact that reliance has been placed thereon by the public and those having an interest in the interpretation of the law.

Appellant's position is that the foregoing principles of statutory construction, when considered in view of *Semon Bache & Co.* v. *United States*, 62 Treas. Dec. 434, T.D. 45973, affirmed, 21 CCPA 525, T.D. 46974 (1933), require a reversal of the decision of the Customs Court in the present case. The decision in *Semon Bache* is early enough to be effectively contemporaneous with the statute here in issue. The difficulty we find is that *Semon Bache* was dealing with a different section of the Tariff Act of 1930 and with a different type of glass. We have found nothing in it which aids us in our search for a meaning to be given to the term "colored" as used in section 224.

The importation in the *Semon Bache* case involved X-ray glass and the issue at bar was whether or not it came within the meaning of plate glass. This was the only question raised by the parties in that case and the court decided that the merchandise came within the definition

of plate glass. In the present case the parties are in complete agreement that the merchandise is properly classifiable as plate glass. The only question here is whether or not the collector properly assessed the additional duty for "colored" plate glass under paragraph 224.

The different problems presented in this case require the conclusion that since the interpretation of paragraph 224 was not raised by the parties or decided by the court in the *Semon Bache* case, it is of no assistance in interpreting the statute here in issue. While we recognize certain factual similarities between *Semon Bache* and the present case, in that additives to glass were employed to impart to it an ability to absorb X-rays in *Semon Bache* and infrared energy in the instant case, the critical and to us determinative factor is that *Semon Bache* did not decide or pass upon the presence of incidental coloration in the glass as subjecting it to extra duty under paragraph 224.

The fact that the coloring in the imported plate glass was or was not obtained by a controlled and deliberate process does not affect its classification as "colored" plate glass. The provision in paragraph 224 for colored plate glass "by whatever process made" contains no limitations. The dutiability of colored plate glass under paragraph 224 is governed by only one factor: the fact that it is colored at the time of importation.

Since paragraph 224 is unambiguous, and does not require a reason for the presence of color, and since witnesses referred to the merchandise as (1) vert, greenish, and (2) bleu, bluish, we find no need for resort to rules of statutory construction. Compare *Estate of Louis S. Fryer* v. *United States*, 42 CCPA 217, C.A.D. 596. The reason for the color which exists in the importation is immaterial. When the purpose of the statute is clear, it should not be construed so narrowly and technically as to prevent the effect that the Congress intended it to have. *United States* v. *General Dyestuff Corp.*, 19 CCPA 410, T.D. 45577.

The judgment of the Customs Court is *affirmed*.